FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 FEB 10 PM 2:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

KIM RYALS, )
)
   Plaintiff, )
)
vs. ) CV 95-PT-1095-S
)
LIBERTY NATIONAL LIFE )
INSURANCE COMPANY, )
)
   Defendant. )
)

ENTERED

FEB 10 1997

## Memorandum Opinion

### Introduction

This cause comes on to be heard on a motion for summary judgment filed by the defendant, Liberty National Life Insurance Company ("Liberty"), on October 24, 1996. In its motion, Liberty argues that the plaintiff, Kim Ryals, has failed to raise a triable issue of fact as to either her hostile work environment sex harassment claim under 42 U.S.C. § 2000e, et seq., or her state-law claim of outrage.[1]

On a motion for summary judgment, the court must assess the proof to ascertain whether

---

[1] Initially, the plaintiff apparently raised claims of constructive demotion, disparate treatment and retaliation, in addition to her hostile environment and outrage claims. However, in her brief the plaintiff has elected to forgo these claims. Consequently, these claims will be DISMISSED, with prejudice.

there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is proper only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exists a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . ." in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

## Facts

The plaintiff was employed by the defendant beginning on February 1981 and became an insurance sales agent in the Bessemer District in 1985. Her supervisor was Larry Robinson ("Robinson"), the District Manager of the Bessemer District, throughout the period relevant to this action. The plaintiff alleges that, commencing with her designation as a sales agent in the Bessemer District, Robinson began to harass the plaintiff and make embarrassing sexual references to her. Allegedly, Robinson followed the plaintiff to her hotel room one evening after dinner and attempted to kiss her. She rejected his advances. Subsequently, Robinson allegedly attempted to

hold the plaintiff's hands and hug her occasionally until the filing of the EEOC charge and the plaintiff's complaining to Liberty in 1994. In addition, he also allegedly stated that things would be different between himself and the plaintiff were he younger. The plaintiff states that at the time of an investigation into Becky Stanton by Liberty in 1986, the plaintiff informed personnel at Liberty that Robinson was harassing her.

On July 12, 1992, the plaintiff was promoted to the position of sales manager. Due to either poor performance, as the defendant alleges, or sex harassment, as the plaintiff alleges, the plaintiff requested and was reassigned to the position of sales agent on June 28, 1993.

On January 31, 1994, the plaintiff requested sick leave from Liberty for depression and anxiety. She remained on sick leave until May 23, 1994. The plaintiff alleges that Robinson's treatment of her was either a cause of her depression or an aggravator of her depression. While on sick leave, Robinson once called the office of the plaintiff's physician to determine if a sick-leave form had been forged. The plaintiff cites this phone call as another incident of Robinson's harassment of her.

The plaintiff alleges that, upon her return, at a meeting in which numerous other agents were present, Robinson allegedly commented that the plaintiff was showing "entirely too much skin." The plaintiff alleges that this exacerbated her depression and anxiety, from which she was only just recovering. At an unspecified time, Robinson, sitting across the room from the plaintiff, allegedly told her that she should close her legs, that he was "tired of looking at it."

When the plaintiff returned from her sick leave, she was reassigned to a different agency area. Because the plaintiff perceived the area to be unsafe, she requested a transfer. After two months, she was transferred to a safer area. This transfer to the new area, agency 80, occurred while the plaintiff was on vacation. Because, allegedly, collection was required on policies in the new agency at that time, Robinson called the plaintiff in from vacation to service the newly-assigned accounts. She worked on Thursday and Friday of her vacation week. On August 9, 1994, the plaintiff filed her charge with the EEOC.

Later, the plaintiff brought Robinson's more "recent" acts of alleged sex harassment (those occurring after 1986) to the attention of Liberty. The plaintiff admits that after reporting the alleged harassment to Liberty, the harassment stopped.

3

## Contentions & Analysis

The defendant contends that the plaintiff cannot state a claim of hostile environment sex harassment, first, because all of the conduct of Robinson was too attenuated to constitute an objectively hostile working environment. Doe v. R.R. Donnelly & Sons, 42 F.3d 439, 444 (7th Cir. 1994). The hugging, the hand-holding, and the comments all occurred over a nine-year period. In addition, other than the initial attempt to kiss, Robinson made no sexual advances toward the plaintiff, according to the defendant. Therefore, states the defendant, the conduct was not so pervasive as to create a hostile environment.

The plaintiff responds that the court should look to "not only the frequency of the incidents, but to the gravity of the incidents as well." Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1510 (11th Cir. 1989). The events cannot be treated as discrete incidents, separated and individuated by temporal gaps, but should instead be drawn together to be considered as an interwoven whole. A determination of pervasiveness, states the plaintiff, is an inquiry into the effect of the incidents of harassment. There is, argues the plaintiff, a genuine issue of material fact that the effects of the incidents of harassment were pervasive.

Second, states Liberty, the only time at which the plaintiff alleges to have informed it of Robinson's harassment was in 1986, eight years prior to her filing of an EEOC charge. After making the charge, when the plaintiff finally complained to the defendant, Robinson's harassment stopped. Therefore, the defendant states, it cannot be held liable for Robinson's harassment, if such occurred. The plaintiff states that she alerted the defendant to Robinson's harassment of her during the Becky Stanton incident, occurring in 1986, and that, therefore, Liberty had knowledge of the harassment.

The plaintiff's alleged complaint about Robinson occurred in 1986, eight years prior to the filing of her charge. Only after she was called back from her vacation in 1994 did she file a charge with the EEOC. The plaintiff did nothing to alert Liberty of her "recent" complaints about Robinson within or at any time near the 180-day period and, as a result, failed to determine whether at least since 1988, Liberty was permitting discrimination in its ranks. One purpose of the 180-day filing period is to encourage plaintiffs to report discrimination soon after it occurs, so that it can be halted quickly. Allowing a plaintiff to wait until it suits her to notify management does little to help

stop discrimination. Instead, a delay puts the court in the business of second-guessing what is by time the charge is filed a pure business decision or requires the court to look for the taint of harassment long after the harassment has been eradicated by the business. After she complained, the alleged conduct ceased. The hostile environment claim will be dismissed.

On the outrage claim, he plaintiff and defendant dispute the extent of the egregiousness of Robinson's treatment of her. The defendant argues that the degree of egregiousness must be high to constitute outrage; the plaintiff insists that a trier of fact need only find it to meet a rather low standard. In addition, the defendant argues that because she never notified it of Robinson's conduct, it cannot be held liable for any outrage committed by him.

In order for an employer to be held liable for the torts of an employee, the employee must have been acting in the line and scope of his employment or the employer must have ratified, confirmed, or adopted the unauthorized wrongful conduct of the employee. Moman v.. Gregerson's Foods, Inc., 570 So.2d 1215 (Ala. 1990). In the present case, the plaintiff's evidence of outrageous conduct relates to Robinson's treatment of her. The alleged mistreatment is not so indecent as to meet the stringent requirements of outrage claims.

In Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1044 (Ala. 1993), the court stated:

> This Court has consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this Court has held in a large majority of the outrage cases reviewed that no jury question was presented.

The court further noted that the only cases in which it had found sufficient evidence to support outrage claims fell into the categories of (1) family burial misconduct; (2) heavy-handed and barbaric insurance adjustment tactics; and (3) a case involving egregious sexual harassment. The latter case, Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala. 1989) recites, on page 324, 17 instances of egregious misconduct which the court considered. The difference between the facts of that case and those here are apparent. Workplace environments, in the absence of indecency, should be judged under other laws. Therefore, the defendant's summary judgment motion as to the plaintiff's outrage claim will be granted.[2]

---

[2] Outrage claims are automatically made by a multitude of plaintiffs. Few prevail. This court's primary holding is that these type claims do not fall under the extreme requirements of outrage claims. The elements necessary to establish a claim of outrage under Alabama law were set out in Smith v. Scott Paper Co., 620 So.2d 976 (Ala. 1993), where the court stated that in order to establish an outrage claim, a plaintiff must "present substantial evidence that [the defendant] 'by extreme and outrageous conduct intentionally or recklessly' caused [the plaintiff] to suffer 'severe emotional distress.'" In

## Conclusion

For the forgoing reasons, the defendant's motion for summary judgment will be granted. The plaintiff's action will be dismissed, with prejudice.

This 10th day of February 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

Angle v. Dow, 822 F.Supp. 1530 (S.D. Ala. 1993), the court stated that "mere insults, indignities, threats, or annoyances are insufficient to give rise to the tort of outrage." The Angle court also stated that "it is the province of the trial judge to decide, in the first instance, whether a defendant's conduct is sufficiently outrageous and extreme as a matter of law." Id.

6